**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1833
_____

BANXCORP,
                    Appellant
v.

BANKRATE, INC., a Delaware Corporation
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-07-cv-03398)
District Judge: Honorable Claire C. Cecchi
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1
on January 20, 2021

Before: SMITH, *Chief Judge*, HARDIMAN, and ROTH, *Circuit Judges*.

(Filed: February 25, 2021)

_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

In 2007, Appellant BanxCorp filed this antitrust action against Bankrate. The District Court, in a thorough and well-reasoned opinion, ruled in favor of Bankrate on the parties' cross-motions for summary judgment, finding BanxCorp failed to marshal any evidence of a factual dispute or meritorious legal claim. We will affirm.

I

Between 1996 and 2010, BanxCorp and Bankrate competed in the online financial information publication market. They published online interactive tables compiling mortgage and lending rates offered by various financial service providers (FSPs). When visitors to their websites entered search parameters—for example, a limited geographic area—the website generated a table providing rates that matched the user's inquiry. Many of the interest rates in the tables were hyperlinked to the individual FSP's website, allowing the user to interact directly with the chosen FSP. For inclusion in the companies' tables, FSPs entered into individual agreements with, and paid fees to, BanxCorp and Bankrate.

In 2012—more than five years after filing its initial complaint—BanxCorp filed its 110-page, 321-paragraph Seventh Amended Complaint, arguing Bankrate's rate table operations violated section 2 of the Sherman Act, section 7 of the Clayton Act, and parallel provisions under New Jersey's antitrust laws.[1] The parties later filed cross-

---

[1] The relevant portions of New Jersey's antitrust act, which largely mirror the language of the Sherman Act, "shall be construed in harmony with the ruling judicial interpretations of comparable [f]ederal antitrust statutes." N.J. STAT. ANN. § 56:9-18 (West 2020). *See*

2

motions for summary judgment, and in 2015, the District Court heard oral argument on the matter. In March 2019, BanxCorp filed a petition for a writ of mandamus with this Court, seeking an order directing the District Court to decide the pending summary judgment motions. Before this Court acted on the writ of mandamus, the District Court granted Bankrate's motion for summary judgment and denied BanxCorp's cross-motion. BanxCorp filed a motion for reconsideration, which the District Court denied. BanxCorp timely appealed.[2]

## II

On appeal, BanxCorp raises a congeries of arguments, none of which we find persuasive.

## A

BanxCorp's first two arguments address the District Court's summary judgment analysis. BanxCorp claims "[t]he District Court erred in systematically construing all evidence in the light most favorable to Bankrate, the summary judgment moving party." BanxCorp Br. 15. It also contends the Seventh Amended Complaint raised "issue[s] as to numerous material facts," such that summary judgment was inappropriate. BanxCorp Br. 17. We disagree.

---

*Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 748 (3d Cir. 1996) (dismissal of New Jersey state antitrust claim proper after parallel federal antitrust claims failed).

[2] The District Court exercised jurisdiction over the Sherman Act and Clayton Act claims under 28 U.S.C. §§ 1331, 1337, and over the state law claims under 28 U.S.C. § 1367(a). We exercise jurisdiction under 28 U.S.C. § 1291.

Far from showing any systematic error, BanxCorp fails to identify even a single example of either the District Court's construing evidence in the light most favorable to Bankrate where it was the movant, or any disputed material fact preventing summary judgment against BanxCorp. Instead, its entire analysis is just a recitation of summary judgment rule statements, followed by a conclusory claim the District Court erred. *See* BanxCorp Br. 15–18. Apart from BanxCorp's inability to cite individual instances of error, our independent review of the District Court's comprehensive opinion yielded no errors in this regard.

B

BanxCorp next advances numerous overlapping arguments related to the sufficiency of the evidence offered in support of its antitrust allegations. The District Court held that BanxCorp failed to provide sufficient economic evidence to support its claims under both the Sherman Act and the Clayton Act. *BanxCorp v. Bankrate, Inc.*, 2019 WL 2098842, at *4–11 (D.N.J. Mar. 21, 2019). The District Court erred, BanxCorp argues, because "the record is replete with such evidence." BanxCorp Br. 39–40. Once again, we disagree.

1

BanxCorp first asserts the District Court erred in ignoring its "incontrovertible direct proof of Bankrate's monopoly power." BanxCorp Br. 33. However, BanxCorp's claimed "incontrovertible direct proof"—a single citation, without explanation, to a 34-paragraph section of its Statement of Material Facts—fails to establish Bankrate charged "supracompetitive prices and restricted output." *See Broadcom Corp. v.*

4

*Qualcomm Inc.*, 501 F.3d 297, 307 (3d Cir. 2007). Although BanxCorp does offer evidence Bankrate increased its prices, *see, e.g.*, Dist Ct. Dkt. No. 410-1 ¶¶ 32–34 [hereinafter PSMF], we agree with the District Court that price increases, without more, do not constitute supracompetitive pricing. *See Harrison Aire, Inc. v. Aerostar Int'l, Inc.*, 423 F.3d 374, 381 (3d Cir. 2005) ("[A] firm's comparatively high price may simply reflect a superior product."). Even assuming the prices were supracompetitive, BanxCorp admits Bankrate did not restrict output during the challenged period—it increased it. *See* PSMF ¶ 35 ("Bankrate's Internet rate table listing customers nearly tripled within less than three years."). Because BanxCorp's "evidence does not support a reasonable inference that Bankrate charged supracompetitive prices and restricted output," *BanxCorp*, 2019 WL 2098842, at *4, it did not offer sufficient evidence to find monopoly power through direct evidence.

2

BanxCorp also claims the District Court erred in rejecting its attempts to prove monopoly power through circumstantial evidence. As a threshold matter, the District Court found BanxCorp failed to meet its burden of defining the relevant market in terms of required "reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it," *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997) (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962)), thereby dooming any attempts to prove monopolization circumstantially. *BanxCorp*, 2019 WL 2098842, at *5–6. It did not err in doing so.

5

BanxCorp defines the market as "fee-based aggregated bank rate table listings with interactive functionalities on the Internet." PSMF ¶ 1. On appeal, BanxCorp points to two pieces of evidence in support of its proposed market definition. First, it notes Bankrate's "rate increases" with "no decline in the number of advertisers wanting to participate." BanxCorp Br. 42; *see also* BanxCorp Br. 43 ("[T]here was virtually no demand for substitute products in response to Bankrate's significant consecutive price changes."). But like BanxCorp's attempt to use price increases as direct evidence of monopoly power, we agree with the District Court that such increases, without more, "cannot establish cross-elasticity of demand." *BanxCorp*, 2019 WL 2098842, at *6. As observed by the District Court, this evidence "lacks necessary information about the prices of potentially substitutable products and the demand for such products." *Id.*

Second, BanxCorp argues the testimonial evidence of Bankrate's former Chief Executive Officer, Thomas Evans, supports its definition of the relevant market. Specifically, it points to Evans's statements that "Bankrate does not have direct competitors," and that even in light of repeated rate increases, lenders "don't vote with their feet. They don't leave. They are not canceling. They are not finding alternatives." BanxCorp Br. 37, 45. The District Court rejected reliance on those statements for defining the relevant market, noting that "Mr. Evans's anecdotal statements that Bankrate was able to raise prices without driving away FSPs do not substitute for quantitative data showing interchangeability or cross-elasticity." *BanxCorp*, 2019 WL 2098842, at *6. We agree.

Even if BanxCorp adequately defined the relevant market in terms of interchangeability of use and cross-elasticity of demand, we concur with the District Court that its monopolization claims still fail because it has not offered sufficient evidence to show that Bankrate controlled a "dominant share of that market," and that the market was protected by "high barriers to entry." *BanxCorp*, 2019 WL 2098842, at *6–7; *accord Harrison Aire*, 423 F.3d at 381. Because BanxCorp failed as a matter of law to establish its proposed relevant market, its monopolization claim must fail.

3

BanxCorp's inability to define the relevant market also proved fatal to both its attempted monopolization and Clayton Act claims. Absent a proper market definition, BanxCorp could not prove Bankrate had "a dangerous probability of achieving monopoly power" within the relevant market, and its attempted monopolization claim fails. *See Broadcom*, 501 F.3d at 317 (quotation omitted). Similarly, because "determination of the relevant product and geographic markets is a necessary predicate to deciding whether a merger contravenes the Clayton Act," *United States v. Marine Bancorporation, Inc.*, 418 U.S. 602, 618 (1974) (cleaned up), BanxCorp's allegations of unlawful acquisition in violation of the Clayton Act are equally unavailing.[3]

---

[3] BanxCorp also argues in conclusory fashion that the District Court "erroneously considered each aspect of . . . Bankrate's conduct in isolation, rather than looking to Bankrate's conduct taken as a whole." BanxCorp. Br. 31. But BanxCorp points to no example in support of this contention, simply labeling the District Court's analysis "clear error." *Id.* That BanxCorp disapproves the District Court's assessment of the sufficiency of its evidence to withstand summary judgment does not mean the District Court failed to consider the evidence as a whole or that BanxCorp's evidence was sufficient to prevent summary judgment in favor of Bankrate.

## C

BanxCorp's next set of arguments rely on the doctrine of unclean hands. It claims the District Court erred by failing to apply the doctrine against Bankrate in light of two separate facts: (1) that Bankrate's former Chief Financial Officer Edward DeMaria pleaded guilty in 2018 to charges of securities fraud; and (2) that Bankrate utilized an expert report prepared by an individual who allegedly falsified his credentials. We are unpersuaded.

The doctrine of unclean hands applies "when a party seeking relief has committed an unconscionable act immediately related to the equity the party seeks in respect to the litigation." *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 174 (3d Cir. 2001). Here, DeMaria's fraud and the alleged violations of antitrust law have nothing to do with each other. Because "[t]he nexus between the misconduct and the claim must be close," *id.*, BanxCorp's first claim—that the District Court erred in failing to apply the doctrine in light of DeMaria's conviction—fails.

BanxCorp's second claim—that submission of an expert report prepared by an individual with allegedly falsified records necessitates application of the doctrine—also fails. The District Court found "no evidence to show that [Bankrate] had any knowledge of the alleged issues surrounding" the expert at the time it relied on him. *BanxCorp*, 2019 WL 2098842, at *2 n.4. Moreover, as pointed out by the District Court, on Bankrate's request, the Court disregarded the few citations to the expert's report in Bankrate's filings. So the District Court did not abuse its discretion when it declined to apply the doctrine of unclean hands.

8

D

BanxCorp next argues the District Court "erroneously ignored the law of the case and key rulings previously made by . . . the first two district judges who presided over this case." BanxCorp Br. 27. BanxCorp points to language in Judge Salas's opinion at the motion to dismiss stage in which she rejected Bankrate's attempt to terminate the suit prior to discovery. Judge Salas held BanxCorp's allegations, "taken together, when accepted as true, *plausibly support* a showing of . . . monopoly power." *BanxCorp v. Bankrate, Inc.*, 2011 WL 6934836, at *20 (D.N.J. Dec. 30, 2011) (emphasis added). Citing this motion to dismiss holding, BanxCorp now argues "it was a clear error for the District Court to . . . reach the opposite conclusion with respect to the sufficiency of BanxCorp's antitrust claims" at summary judgment. BanxCorp Br. 29.

As the District Court explained, BanxCorp "ignores the fact that Judge Salas' holdings came in a decision on [Bankrate's] motion to dismiss . . . where Judge Salas was required to accept the facts in the . . . complaint as true." *BanxCorp v. Bankrate, Inc.*, 2020 WL 2786925, at *3 (D.N.J. May 29, 2020). In contrast, "[t]o survive a motion for summary judgment, an antitrust plaintiff must produce economically plausible evidence supporting the elements of its claim." *Harrison Aire*, 423 F.3d at 380. BanxCorp's failure to produce the necessary evidence to support viable antitrust claims, *see infra* Section II-B, requires summary judgment in favor of Bankrate—even when the same claims sufficed to survive a motion to dismiss.[4]

---

[4] BanxCorp also argues that Judge Cecchi erred by failing to recuse herself from this case based on her husband's employment as an attorney with a law firm that handles, among

9

\* \* \*

For the foregoing reasons, we will affirm the District Court's summary judgment

for Bankrate.

---

other things, antitrust matters. While at first blush these attacks on Judge Cecchi appear baseless and unwarranted, because the issues were not raised before the District Court (and no justification was offered for failing to do so), we decline to address them. *See Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 146 (3d Cir. 2017).